NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NETAC TECHNOLOGY CO., LTD,**
*Appellant*

**v.**

**SANDISK CORPORATION,**
*Appellee*

---

2016-1098

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/001,747.

---

Decided: July 26, 2016

---

WENYE TAN, Anova Law Group, PLLC, Sterling, VA, for appellant. Also represented by XIAOQUN WU.

DARRYL J. ADAMS, Baker Botts, LLP, Austin, TX, for appellee. Also represented by BRIAN W. OAKS, JEFFREY TODD QUILICI; RUSSELL J. CRAIN, Dallas, TX.

---

Before PROST, *Chief Judge,* SCHALL and CHEN, *Circuit Judges.*

PROST, *Chief Judge*.

This appeal is from a decision of the Patent and Trademark Office Patent Trial and Appeal Board ("Board") in an inter partes reexamination of U.S. Patent No. 7,788,447 ("'447 patent"), owned by Netac Technology Co., Ltd. ("Netac"). The examiner rejected all 35 claims of the '447 patent as obvious. Each claim was rejected based on at least 12 different combinations of prior art, with a total of 60 rejections. Netac appealed the examiner's rejections to the Board, which affirmed all 60 rejections. *Sandisk Corp. v. Netac Tech. Co.*, No. 2015-001443, 2015 WL 5092840, at *1 (PTAB Aug. 21, 2015) ("*Board Decision*").

Netac then timely appealed to us. For the reasons stated below, we affirm the Board's decision.

## BACKGROUND

The '447 patent relates to a flash memory external storage device. '447 patent Abstract. The portable storage device is in the form of a single-piece USB flash drive that replaces prior art floppy disk drives and other physical drives, which require two separate devices to be operational—a physical drive connected with a host computer and a storage device (e.g., a floppy disk) to be inserted into the physical drive for data access. *Id.* at col. 1 ll. 39–49.

The claimed external storage device uses flash memory as storage media. Power for the external device is provided by a host computer via a USB, and a data exchange channel is established for the host computer and the external storage device to exchange data or information in accordance with the USB standard. *Id.* at col. 5 ll. 4–12. When the external flash memory storage device is plugged into the data processing host, a driver coordinates with firmware in the flash device to initialize the device and assign a display symbol for the external

device. *Id.* at col. 9 ll. 21–35. The driver processes operation requests in magnetic disk operation format that are sent from the operating system to the external device. The driver then converts the operation instructions into a format for execution by the firmware. *Id.* at col. 4, ll. 27–67.

The '447 patent has 35 claims, of which claim 1 is the only independent claim. Claim 1 recites:

1. A portable flash memory storage device comprising:

at least one flash memory module built-in said device, wherein said flash memory module is arranged on a block basis;

a USB or IEEE 1394 connector for establishing a data exchange channel between a host computer and said flash memory module based on USB or IEEE 1394 standard;

a microprocessor for processing commands to directly access data or information in the said flash memory module, said microprocessor further comprises a firmware for processing user requests to access the flash memory module; and

a circuit connected with said USB or IEEE 1394 connector and said flash memory module, through which a DC power supply is provided from said host computer through said USB or IEEE 1394 connector to said flash memory module and said microprocessor upon connecting said portable flash memory storage device with said host computer,

wherein said portable flash memory storage device only acquires DC power from the host computer through said USB or IEEE 1394 connector; and

> wherein said microprocessor coordinates with a driver for the portable flash memory device in the host computer to assign and display a device symbol for said portable flash memory device upon connecting said USB or IEEE 1394 connector to the host computer.

'447 patent col. 12 ll. 2–30.

During the reexamination, the examiner rejected all 35 claims based on various combinations of three primary references and eleven secondary references. Each claim was rejected based on at least 12 different combinations of prior art, with a total of 60 rejections. A list of all references and the 60 rejections can be found in the Board's final decision. *Board Decision*, 2015 WL 5092840, at *2–4.

In its response to the examiner's non-final rejection of the claims, Netac attempted to swear behind the three primary references, alleging that the subject matter of the claims was conceived before November 1, 1998, and was reduced to practice no later than February 1999. The examiner disagreed, finding that one of the references, U.S. Patent No. 6,292,863 ("Terasaki"), was 35 U.S.C. § 102(b) art that cannot be sworn behind; that the earliest conception date shown was February 2, 1999; and that Netac failed to exercise the required diligence during the relevant times.

On April 12, 2013, after closing prosecution, the examiner issued a Right of Appeal Notice. Netac appealed to the Board, making many of the same arguments that it had made before the examiner. The Board affirmed the rejections of all 35 claims.

Netac timely appeals the Board's decision to us. Notably, many of the arguments that Netac makes before us in this appeal are identical to those made by Netac in a related appeal that we recently decided. In *Netac Tech-*

*nology Co. v. SandDisk Corp.*, No. 15-1630, Netac appealed the rejection of all claims of U.S. Patent No. 6,829,672 ("'672 patent"), the parent of the '447 patent. We summarily affirmed the Board's decision in that case. *Netac Tech. Co. v. Sandisk Corp.*, No. 2015-1630, 2016 WL 495590 (Fed. Cir. Feb. 9, 2016).

We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

We review the Board's legal conclusions de novo and factual determinations for substantial evidence. *See In re Elsner*, 381 F.3d 1125, 1127 (Fed. Cir. 2004); *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). "A finding is supported by substantial evidence if a reasonable mind might accept it as adequate to support the finding." *In re Adler*, 723 F.3d 1322, 1325 (Fed. Cir. 2013).

Netac makes a number of arguments on appeal. First, Netac contends that the Board erred in determining the invention date of the '447 patent and in refusing to determine the publication dates of certain secondary references. Second, Netac argues that the Board erred in its construction of two claim terms: "directly access" and "special operation instruction." Third, Netac challenges the Board's rejection of all claims as obvious.

We conclude that substantial evidence supports the Board's findings that Netac failed to show conception before February 2, 1999, and that it failed to establish diligence during the entire relevant time period. Importantly, Netac does not appear to dispute the Board's finding with respect to lack of diligence on appeal. We thus agree with the Board that Netac cannot antedate any of the three primary references and that they were properly considered prior art. We also agree with the Board that Netac waived its argument that the publication dates for three of the secondary references were

incorrect because Netac failed to challenge the publication dates during prosecution.

Netac's claim construction arguments are also unpersuasive. Netac contends that the term "directly access" means "communicating without a communication protocol conversion." Appellant's Br. 24. We note that another panel of the Board rejected this same argument by Netac in the related reexamination of the '672 patent, *Sandisk Corp. v. Netac Tech. Co.*, No. 2013-004839, 2013 WL 6858246, at *16 (PTAB Dec. 30, 2013), and that we summarily affirmed the Board's decision in that case, *Netac Tech. Co. v. Sandisk Corp.*, No. 2015-1630, 2016 WL 495590 (Fed. Cir. Feb. 9, 2016). We again find no error in the Board's determination that nothing in the intrinsic record limits the term "directly access" in the manner proposed by Netac.

With respect to "special operation instruction," we note that Netac did not proffer a construction for this term before the Board. Thus, to the extent that Netac has not waived this argument, at most, the question is whether the Board properly determined that two of the secondary references disclose the "special operation instruction" limitation. We conclude that substantial evidence supports the Board's conclusion that both references "disclose conversion of commands from a magnetic disk format and sending those commands to a flash memory," J.A. 31, and thus find no error in the Board's obviousness determination on this point.

Finally, Netac challenges a number of the Board's findings in its obviousness analysis. For example, the Board affirmed the examiner's rejections of each of the 35 claims on the basis of the Terasaki reference in combination with various secondary references. Netac says that all of those rejections should be set aside because Terasaki does not teach the "directly access" term under Netac's proposed construction. As explained above, however, we

disagree with Netac's construction. Because Netac presents no further persuasive argument with respect to those rejections, we conclude that the Board did not err in its obviousness determination.

## CONCLUSION

We have considered Netac's remaining arguments and conclude that they are without merit. Because there was no error in the Board's determination that all claims of the '447 patent are unpatentable as obvious over the cited prior art, we affirm.

**AFFIRMED**